**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**FEDERAL TRADE COMMISSION,**

    **Plaintiff,**

v.                                                          **Case No. 8:09-cv-547-T-23TBM**

**HOME ASSURE, LLC,
B HOME ASSOCIATES, LLC,
d/b/a EXPERT FORECLOSURES,
BRIAN BLANCHARD, MICHAEL GRIECO,
MICHAEL TRIMARCO, AND
NICHOLAS MOLINA,**

    **Defendants.**
_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the court for a Report and Recommendation on a construed motion to enter the proposed preliminary injunction (Doc. 37) filed by the Federal Trade Commission ("FTC" or "Plaintiff") as against each of the Defendants. By its motion, Plaintiff contends that the Defendants have engaged and continue to engage in a mortgage foreclosure rescue scheme that violates Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). Defendants Michael Trimarco and Nicolas Molina oppose the motion.[1] (Doc. 38). The parties have filed

---

[1] Defendant Home Assure LLC ("Home Assure") was a Florida limited liability corporation organized in February 2007 and formally dissolved in February 2009. B Home Associates, LLC ("B Home") was a Florida limited liability corporation organized in October 2008. Neither one has entered an appearance in the case. In an oral report to the court on March 31, 2009, the temporary Receiver reported that B Home was insolvent with only a few hundred dollars in a bank account, no receivables, and no other assets. Absent a request to provide additional services, he intended to take no further action.
    By Order dated April 3, 2009, the district judge granted in part the FTC's motions

declarations and other documentary evidence in support of their positions. *See* (Docs. 5, 7-8, 23, 30, 33, 41-42). A hearing on this matter was conducted on April 6, 2009.

I.

A.

A brief statement of the procedural history may be useful. On March 24, 2009, Plaintiff filed its Complaint for Permanent Injunctive and Other Equitable Relief (Doc. 1) and Motion for an Ex Parte Temporary Restraining Order With Asset Freeze and Other Equitable Relief and Order to Show Cause Why a Preliminary Injunction Should Not Issue with memorandum (Docs. 4, 6).

On March 26, 2009, Plaintiff's Motion for an Ex Parte Temporary Restraining Order With Asset Freeze and Other Equitable Relief and Order to Show Cause Why a Preliminary Injunction Should Not Issue[2] (Doc. 4) was granted as to each of the Defendant companies and the individual Defendants. (Doc. 13). By this Order, Defendants were temporarily restrained and enjoined from making or assisting in the making any statement or misrepresentation of material fact that is false or misleading, to any consumer in connection with the sale of mortgage foreclosure rescue services, including, but not limited to any false or misleading

---

(Docs. 35-36) to enter joint stipulations and extend the temporary restraining order to April 30, 2009, as to Defendants Brian Blanchard and Michael Grieco. *See* (Doc. 39). The Order also adjourned the preliminary injunction hearing with respect to those defendants. *See id.*

[2]The motion is supported by the Memorandum in Support of its Motion for an Ex Parte Temporary Restraining Order with Asset Freeze and Other Equitable Relief and Order to Show Cause Why a Preliminary Injunction Should Not Issue (Doc. 6) and exhibits filed in support thereof (Docs. 5, 7-8).

representation that the Defendants will stop foreclosure in all or virtually all instances or that the Defendants will refund consumers' fees in all instances if foreclosure is not stopped. In addition to the temporary injunction, the court imposed an asset freeze as against the property of each of the Defendants, ordered the collection and preservation of the Defendants' records, and appointed a temporary Receiver for the corporate Defendants. The Order also directed Defendants to show cause why pending a final decision on the merits of Plaintiff's complaint a preliminary injunction should not issue enjoining the Defendants from further violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and continuing the freeze of their assets.

On March 31, 2009, individual Defendants Trimarco and Molina filed their Motion for a "Nexus" Hearing, and to Modify and/or Dissolve the Asset Freeze Imposed Pursuant to the March 26, 2009, Ex Parte Temporary Restraining Order (Doc. 23) and Emergency Motion to Stay Expedited Disclosure Provisions of TRO and for a Protective Order Pending Resolution of Plaintiff's Motion for Preliminary Injunction (Doc. 24). On April 2, 2009, Plaintiff filed its oppositions (Docs. 30-31) to Defendants' motions. Defendants' emergency motion (Doc. 23) was denied on April 2, 2009, s*ee* (Doc. 34), and their motion for a "Nexus" hearing and to modify and/or dissolve the asset freeze (Doc. 23) was denied on April 8, 2009, upon expiration of the TRO. *See* (Doc. 52).

On April 3, 2009, Plaintiff filed its (Proposed) Order of Preliminary Injunction (Doc. 37), which the district court has construed as a motion to enter the proposed preliminary injunction (Doc. 40). It is this pleading that is before the undersigned for the issuance of a report and recommendation. In response, Defendants Trimarco and Molina have filed their Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction and Motion to

Dissolve the Ex Parte Temporary Restraining Order with Asset Freeze and Other Equitable Relief (Doc. 38).[3] Appended to the pleading are declarations from Defendants Trimarco, Molina, Grieco, and Blanchard, a declaration from John Kubinec, and correspondences from satisfied customers. Defendants have also filed a Notice of Filing Supplemental Authority, which includes two law review articles addressing the scope of federal agency remedies. (Doc. 42).[4]

B.

At present, the FTC seeks the imposition of a preliminary injunction, including an asset freeze of essentially the same character as granted by the TRO, as against Defendants Trimarco and Molina and the corporate Defendants. It alleges there is good cause to believe that the Defendants have engaged in and are likely to again engage in acts or practices which have violated or will violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). The gravamen of the FTC's allegations is that the Defendants have participated in a deceptive mortgage foreclosure rescue scheme that has resulted in losses to consumers throughout the nation. More particularly, Plaintiff maintains that the Defendants, through the activities of Home Assure and later B Home, made false promises to consumers to help them stop pending or impending home foreclosure actions and 100% money back guarantees to induce consumers

---

[3]Because the TRO expired at 5:00 p.m. on April 8, 2009, Defendants' Motion to Dissolve the Ex Parte Temporary Restraining Order with Asset Freeze and Other Equitable Relief (Doc. 38) is appropriately denied as moot.

[4]Two additional motions were filed. As indicated at the hearing, Plaintiff's Motion in Limine to Exclude Evidence of Satisfied Customers (Doc. 33) and Defendants' Motion in Limine to Exclude Customer and Former Employees' Declarations and Unsworn Customer Complaints at the Hearing on the FTC's Injunction Motion (Doc. 45) are DENIED.

4

to use their services.[5] After being paid consumer fees, the FTC contends that Defendants failed to stop home foreclosures and failed to refund the consumers' fees. The FTC alleges that the Defendants carried out their scheme on a nationwide basis through advertising, marketing, and promoting via company internet websites. Claiming a likelihood of success on the merits of the underlying suit and urging that such conduct as is demonstrated results in immediate and irreparable harm to the consuming public and because a continuing injunction is in the public interest, the FTC urges its entitlement to such relief. As an ancillary to the injunction or as a stand alone remedy, the FTC also seeks a continuation of the asset freeze, which it urges is necessary to avoid the dissipation of assets and to assure a fund for consumer redress. It maintains that since the fraud was in the inception of this scheme, the outcome is irrelevant, and even though some consumers received relief through the activities of the

---

[5]In support, the FTC relies upon the same affidavits concerning its investigation and consumer declarations submitted in support of the TRO. At the hearing, the FTC contended that even though Trimarco and Molina may not have been involved in the deceptive practices themselves, they were nonetheless liable given that they were co-founders of Home Assure, each owned a 40% share of the company, and each undertook management roles. The court now has the benefit of declarations filed by Messrs. Trimarco and Molina, along with their opposition. Defendant Molina admits that his role in Home Assure was to provide initial capital and ongoing financing. Initially, he was a managing member. He assisted in purchasing client leads and contacted outside firms to run and manage search engine campaigns for the company. Otherwise, he denies an active role. He resigned from Home Assure in September 2008. He claims to have loaned $155,561.41 to the company, none of which was repaid. He claims $83,607.68 in salary payments from the company. He denies any interest in B Home. (Doc. 38-2). Defendant Trimarco also admits to initially being a managing member of Home Assure. He provided financing, tech-ops, and financial operations expertise. He created the FATS System, a hosted client relationship management tool and workflow process system for use by Home Assure. He claims to have loaned Home Assure $393,162.03. He claims he was paid $86,054.79 in salary from the company. He resigned from the company in October 2007 as the company was winding down due to financial losses. He denies any interest in B Home. (Doc. 38-3).

5

Defendants, the full measure of restitution owed is the difference between gross receipts and the sums paid out to reimburse unsatisfied consumers. It likewise seeks continued expedited discovery and the reappointment of the temporary Receiver to marshal the records and assets and to oversee the affairs of the corporate Defendants.

Defendants Trimarco and Molina counter that this suit is "a textbook example of government overreaching." By their proffer,[6] Defendants both deny any fraudulent or deceptive activity, individually or via Home Assure. Instead, they contend that Home Assure was a legitimate business which actually helped hundreds of consumers achieve desired loan workouts. Because the company was financially unsuccessful, its operations were wound down in October 2008. Mr. Molina resigned from Home Assure in September 2008 and Mr. Trimarco resigned in October 2008. Both deny any connection with B Home, a company formed by Defendant Blanchard. While denying the FTC's core allegations of fraud or deception, both contend that regardless of the allegations, the FTC is wholly unable to establish any on-going fraudulent or deceptive conduct or the likelihood of the recurrence of such conduct. To the extent that the FTC seeks a continuation of the injunction and the asset

---

[6]In addition to their own declarations, Defendants submit Grieco's declaration to tout the success of Home Assure and dispute many of the consumer declarations filed by the FTC. By Grieco's account, of the approximately 26,600 people who spoke with a Home Assure representative, the company assisted 11, 294 with some form of consultation; of those, 8,944 received ongoing lender assistance and advice without paying any fee; and the remaining 2,350 people paid Home Assure a fee for its assistance. Of those people, 75% received a resolution from a lender, 11% received some modification or work-out from the lender but denied the offer, and 8% received refunds totaling $283,655.99. (Doc. 38-4). By declaration, Defendant Blanchard attests that Trimarco and Molina have never had any interest in B Home, which he founded in October 2008. (Doc. 38-5). By the accounting above, Defendants contend that Home Assure received $3,721,807.84 in revenues but the net income over the life of the venture was a negative $456,383.22. (Doc. 38-6).

6

freeze, Defendants claim considerable personal and professional hardship. They urge that the present asset freeze should be lifted in its entirety or substantially modified. In sum, Defendants contend that the FTC cannot establish the likelihood of success on the merits or its legal entitlement to an injunction as against them.

## II.

### A.

Rule 65 of the Federal Rules of Civil Procedure governs the entry of a preliminary injunction. The purpose of a preliminary injunction is to maintain the *status quo* until the court can enter a final decision on the merits of the case. *United States v. DBB, Inc.*, 180 F.3d 1277, 1282 n.5 (11th Cir. 1999); *see also Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).[7] Generally, a party seeking entry of a preliminary injunction must establish (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003) (citing *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)). "[A] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of

---

[7]In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

persuasion' as to each of the four prerequisites." *Id.* (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)). The entry of a preliminary injunction is "the exception rather than the rule," and the movant must clearly carry the burden of persuasion. *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975). A plaintiff may support its motion for a preliminary injunction by setting forth allegations of specific facts in affidavits. M.D. Fla. R. 4.05(b)(2), 4.06(b)(3). In considering a motion for preliminary injunctive relief, a district court may rely on affidavits and hearsay materials that would not be admissible as evidence for entry of a permanent injunction. *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995).

B.

Section 5(a) of the Federal Trade Commission Act prohibits unfair or deceptive acts or practices in or affecting commerce. 15 U.S.C. § 45(a)(1). To establish that an act or practice is deceptive under that section, the FTC must establish that (1) there was a representation, (2) the representation was likely to mislead consumers acting reasonably under the circumstances, and (3) the representation was material. *FTC v. Tashman,* 318 F.3d 1273, 1277 (11th Cir. 2003). A representation is material if it is of a kind usually relied upon by a reasonably prudent person.[8] *FTC v. Amy Travel Serv. Inc.,* 875 F.2d 564 (7th Cir. 1989).

---

[8]Proof of reliance upon misrepresentations or misleading statements by each purchasing consumer is not required for equitable relief. *McGregor v. Chierico*, 206 F.3d 1378, 1388 (11th Cir. 2000) (quoting *FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 605 (9th Cir. 1993)). Actual reliance is presumed once the FTC establishes that the defendant made material misrepresentations, that they were widely disseminated, and that consumers purchased the defendant's product. *FTC v. Transnet Wireless Corp.*, 506 F. Supp. 2d 1247, 1266-67 (S.D. Fla. 2007). Express claims, or deliberately made implied claims, used to induce the purchase of a particular product or service are presumed to be material. *See id.*

8

Material misrepresentations or omissions made to induce the purchase of goods or services constitute deceptive acts or practices violate this section. *See FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1029 (7th Cir. 1988); *FTC v. SlimAmerica, Inc.*, 77 F. Supp. 2d 1263, 1272 (S.D. Fla. 1999). Such acts or practices may be unfair or deceptive without an intent to deceive or cause consumer injury. *Orkin Exterminating Co. v. FTC*, 849 F.2d 1354, 1368 (11th Cir. 1988).

Upon a reasonable belief "that any person, partnership, or corporation is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission," the FTC is authorized to bring suit in district court to enjoin such violations. 15 U.S.C. § 53(b). "Upon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest . . . a preliminary injunction may be granted without bond. . . . ." *Id.* Thus, the court must (1) determine the likelihood that the FTC will ultimately succeed on the merits, and (2) balance the equities. *FTC v. Univ. Health, Inc.*, 938 F.2d 1206, 1217 (11th Cir. 1991). Additionally, given the express terms of the statute, the court must also address whether the wrongs are ongoing or likely or are apt to continue. *See* 15 U.S.C. § 53(b)(1) ("Whenever the Commissioner has reason to believe – (1) that any person, partnership, or corporation *is violating, or is about to violate*, any provision of law enforced by the Federal Trade Commission, . . .") (emphasis added). A preliminary injunction will issue only if the wrongs are ongoing or are apt to continue. *See id.*; *see also FTC v. Mktg. Response Group, Inc.*, No. 96-111-civ-T-17A, 1996 WL 420865, at *2 (M.D. Fla. June 24, 1996).

III.

At the outset, I find there is a substantial likelihood that the FTC will prevail on its claims that the Defendants have violated the FTC Act by representing to consumers that they would stop foreclosure and refund the consumer's fee if foreclosure was not stopped. The record before the district judge upon issuance of the TRO, as well as evidence presented on the instant motion, adequately demonstrates the representations attributable to Home Assure and B Home (those on company websites and those made by employees) constitute material misrepresentations that could, and did, mislead reasonable consumers. While Defendants Trimarco and Molina proffered evidence which calls into question the credibility the certain testimony proffered by the FTC, namely, that of two former employees and certain consumer declarations, at the end of the day, even on their presentation, there remains unchallenged consumer declarations that support the FTC's allegations.[9] Thus, on the evidence presented, the FTC has met its burden of demonstrating a likelihood of success as against Home Assure and B Homes. *See Gem Merch. Corp.,* 87 F.3d at 470; *see also FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 347 (9th Cir. 1989) (providing that, because irreparable injury is presumed in a statutory enforcement action, the district court need only find some chance of probable success on the merits). For the reasons set forth below, I also find that the FTC has met its burden with respect to Defendants Trimarco and Molina.

---

[9] Although Defendants have proffered evidence of customer satisfaction and evidence suggesting that Home Assure was not a fly by night operation or some sort of foreclosure boiler room, such does not negate the finding that the FTC can demonstrate a likelihood of success on the merits to a certain degree. *See FTC v. Wilcox*, 926 F. Supp. 1091, 1099 (S.D. Fla. 1995) (providing that the existence of some satisfied customers is not a defense to liability); *Amy Travel Serv., Inc.*, 875 F.2d at 572 (same).

10

Once corporate liability is established, the FTC must show that the individual defendants participated directly in the practices or acts or had the authority to control them, and that the individual defendants had some knowledge of the practices. *FTC v. Gem Merch. Corp.*, 87 F.3d 466, 470 (11th Cir. 1996) (quoting *Amy Travel Serv., Inc.*, 875 F.2d at 573). Given the authority of Trimarco and Molina within the corporate structure of Home Assure and their involvement in the formation and initial development of the company, including its financing, IT structure, business, and marketing strategies, individual liability appears likely as the evidence also suggests their knowledge of Home Assure's practices once it was up and running as well as the legal challenges brought by at least two states as against Home Assure. Thus, it appears the evidence is adequate to demonstrate the likelihood of success on this element of the FTC's proof as against these individuals.

However, under the particular facts of this case, I find it a close issue whether the FTC has met its burden of demonstrating that the equities weigh in favor of issuing a preliminary injunction as against Trimarco or Molina. The principal equity weighing in favor of issuing the injunction is the public interest in protecting consumers from such mortgage foreclosure relief scams. Undoubtedly, this is a significant interest worthy of protection. However, the FTC fails to demonstrate that Home Assure, Trimarco and Molina pose any realistic threat of a recurrence in such activity to merit the drastic remedy achieved under the TRO and sought by this motion. It is undisputed that Home Assure wound down its business in the Fall of 2008,[10] and the FTC makes no showing that either individual has a business history contrary

---

[10]The Defendants' proffer also suggests that the business of Home Assure was not a boiler room operation primed solely for the quick fleecing of the consumers. There is

11

to that represented in their affidavits or that either took any steps to continue similar business activities after Home Assure ceased doing business. In addition, neither individual Defendant is shown to have joined in B Home, the successor venture over which Defendant Blanchard claims ownership and full authority and responsibility. Furthermore, Defendants Trimarco and Molina appear to be sophisticated businessmen. The business of Home Assure was unprofitable, and Trimarco and Molina demonstrate a sizable loss on their investment. From all of this, I conclude that these Defendants have no incentive to have any further involvement in the area of mortgage foreclosure assistance. The FTC is correct that they remained involved even after two states took action against Home Assure, however, the documents suggest those actions were being resolved at the same time Home Assure was winding down it affairs. Had Trimarco or Molina contributed their financial support for, or joined in the activities of, B Home, then perhaps a different conclusion would be called for. However, the FTC concedes that they did not. There is simply no clear showing that these Defendants intend to re-enter this type business. The restrictions sought by the proposed injunction are particularly onerous in scope and affect activities of these Defendants wholly unconnected with the conduct at issue. Additionally, the asset freeze is overbroad in scope and entirely immobilizing in its effect on other legitimate activities of these Defendants. Given my conclusion below that the FTC fails to demonstrate a reasonable possibility of recurrence and the fact that Defendants Trimarco and Molina demonstrate that the issuance of a preliminary

---

evidence of a significant investment in infrastructure, IT, and it appears that a sizable number of consumers who paid Home Assure for its services received some benefit.

injunction would have immediate and extended personal and professional consequences, a balancing of the harms does not favor the FTC on this motion.

In any event, a preliminary injunction can not properly issue because the FTC is unable to demonstrate that Trimarco, Molina, or Home Assure are currently violating, or are apt to violate, any provision of law enforced by the FTC. The FTC makes no showing of any continuing violation and in fact concedes there is none. The FTC does, however, urge that Trimarco and Molina are reasonably likely to engage in future violations should a preliminary injunction not issue. By the FTC's argument, should these Defendants find a way to make the mortgage foreclosure rescue business a profitable venture, they would. That argument simply fails to rise above a speculative level. On this record, I am unable to find that there is a cognizable danger of recurrent violation or some reasonable likelihood of future violations for an injunction to issue as against these two individuals or the corporations, given that one has been dissolved and the other is under receivership.[11] Accordingly, preliminary injunctive relief under § 13(b) is precluded. *See Mktg. Response Group, Inc.*, 1996 WL 420865, at *2 (injunction will issue if "the wrongs are ongoing, or are apt to continue") (citing *FTC v. Evans Products Co.*, 775 F.2d 1084, 1087 (9th Cir. 1985)); *FTC v. Netfran Dev. Corp.*, No. 05-22223-CIV-Ungaro-Benages, (S.D. Fla. June 9, 2006) ("to make a proper showing for an injunction to issue, the FTC must show there is a 'cognizable danger of recurrent violation' or 'some reasonable likelihood of future violations'") (unpublished).

---

[11]In support of its argument that the conduct at issue here is likely to recur in the absence of injunctive relief, the FTC cited to *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1184 (11th Cir. 2007) (addressing factors found important in determining mootness where a private defendant has voluntarily ceased the conduct at issue). The FTC's reliance on such is not persuasive under the facts at hand in this case.

13

In the given circumstances, it appears to me that the FTC's present pursuit against these two Defendants is more about tying up their financial wealth to fund its claim for restitution than about protecting the public against their ongoing or further deceptive activity. To that end, the FTC urges that an asset freeze is warranted and appropriate even in the absence of other preliminary injunctive relief. At the hearing, counsel for the FTC argued that such could be ordered by the court under the broad equitable authority granted to the district courts pursuant to 15 U.S.C. § 53. In opposition, counsel for Defendants Trimarco and Molina argues that an asset freeze is not available as a stand alone remedy and the statute does not provide that it is. Defense counsel points out that the FTC fails to cite to any case authority for its proposition and fails to do so because none exists. I have found no controlling authority for granting an asset freeze other than as an ancillary remedy to an injunction. On it face, Section 13(b) does not provide for a court to order an asset freeze in the absence of finding that injunctive relief is warranted. However, the Eleventh Circuit has clearly recognized that the unqualified grant of statutory authority to issue an injunction under Section 13(b) carries with it the full range of equitable remedies. *See Gem Merch. Corp.*, 87 F.3d at 468-70 (11th Cir.1996). Furthermore, the Ninth Circuit has determined that courts have inherent equitable powers to grant ancillary relief, other than a preliminary injunction restraining future violations of the law, when there is no likelihood of recurrence. *See Evans Products Co.*, 775 F.2d at 1088. Thereafter, in *In re Evans Products Co.*, 60 B.R. 863, 867 (S.D. Fla. May 9, 1986), the court rejected the contention that ancillary equitable relief can only be ordered where primary injunctive relief has been granted, instead finding that a court may, via the grant of jurisdiction in § 13(b), invoke its inherent equitable powers to grant ancillary relief other than injunctive relief when future violations of the law are not likely to

14

recur. In light of the broad grant of equitable authority contemplated, I conclude that the court may order an asset freeze in the appropriate circumstances even in the absence of a likelihood of recurrence. Thus, even if the court agrees with my conclusion that no injunction may issue because the FTC cannot demonstrate the likely recurrence of this conduct, it may nonetheless consider the imposition of an asset freeze to assure that funds will be available in the event the FTC proves its right to further equitable relief. As it presently stands, the assets of these two Defendants appear the only source available from which the court might order such relief for the activities of Home Assure should the FTC prevail.

IV.

Accordingly, for the reasons set forth above, it is recommended that the preliminary injunction requested by the FTC be DENIED. However, if during the objection period the FTC demonstrates that it has not given up on such claim for preliminary relief, it is recommended that the court consider invoking its inherent authority to impose a reasonable asset freeze, one properly limited in scope as determined by the equitable relief actually available to the FTC should it prevail on the merits in this case. Although argued before me, the issues related to the matter of restitution and the proper measure of the same are not within this motion.

Respectfully submitted on this
8th day of April 2009.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

15

**NOTICE OF EXPEDITED OBJECTION PERIOD**

Failure to file written objections to the proposed findings and recommendations contained in this report **by 4:00 p.m. on Monday, April 13, 2009**, shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *see also* Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies to:
The Honorable Steven D. Merryday, United States District Court Judge
Counsel of Record