FEDERAL TRADE COMMISSION,

     Plaintiff,

v.                                     CASE NO: 8:09-cv-547-T-23TBM

HOME ASSURE, LLC,

B HOME ASSOCIATES, LLC, d/b/a
Expert Foreclosures,

BRIAN BLANCHARD,
individually and as a member, officer,
or director of Home Assure, LLC, and
B Home Associates, LLC,

MICHAEL GRIECO,
MICHAEL TRIMARCO, and
NICOLAS MOLINA,
individually and as members, officers, or
directors of Home Assure, LLC,

     Defendants.

_____/

## **ORDER**

     Pursuant to Section 13(b) of the Federal Trade Commission Act (the "FTC Act"),

15 U.S.C. § 53(b), the Federal Trade Commission (the "FTC" or the "Commission") sues

the defendants and requests preliminary and permanent injunctive relief, rescission or

reformation of contracts, restitution, disgorgement, and other equitable relief for the

defendants' alleged deceptive acts or practices in violation of Section 5(a) of the FTC

Act, 15 U.S.C. § 45(a), in connection with the sale of "mortgage foreclosure rescue

services."  On March 24, 2009, the FTC moved (Doc. 4) for an <u>ex parte</u> temporary restraining order and other provisional relief, and a March 26, 2009, "Temporary Restraining Order with Asset Freeze, Appointment of Temporary Receiver, and Other Equitable Relief and Order to Show Cause Why a Preliminary Injunction Should Not Issue" (the "TRO" [Doc. 13]) grants the motion and directs the defendants to appear before United States Magistrate Judge Thomas B. McCoun, III, to show cause why a preliminary injunction should not issue.  An April 3, 2009, order (Doc. 40) construes the FTC's proposed preliminary injunction (Doc. 37) as a motion to enter the proposed preliminary injunction and refers the motion to the magistrate judge for a report and recommendation on the motion.[1]  On April 6, 2009, the magistrate judge heard oral argument from the FTC and from the defendants Michael Trimarco and Nicolas Molina.[2] Following the magistrate judge's April 8, 2009, report and recommendation (Doc. 54), each party objects (Docs. 61, 62) to parts of the proposed findings and conclusions.[3]

---

[1]  A second April 3, 2009, order (Doc. 39) grants in part the FTC's "Motion to Enter Joint Stipulation and Order to Extend the Temporary Restraining Order Against Defendant Michael Grieco" (Doc. 35) and "Motion to Enter Joint Stipulation and Order to Extend the Temporary Restraining Order Against Defendant Brian Blanchard" (Doc. 36) and extends to April 30, 2009, the TRO as to Blanchard and Grieco.

[2]  The defendants Home Assure, LLC, and B Home Associates, LLC, failed to appear.

[3]  The report and recommendation allows five days for objections.  <u>See</u> <u>Hispanic Counseling Ctr., Inc. v. Incorporated Vill. of Hempstead</u>, 237 F. Supp. 2d 284, 290 (E.D.N.Y. 2002) ("Generally, parties are given 10 days after service of a magistrate's report to file written objections.  28 U.S.C. § 636(b)(1)(C). However, that time period may be shortened where exigencies exist."); <u>United States v. Barney</u>, 568 F.2d 134, 136 (9th Cir. 1978) (exigency may warrant requiring objections in fewer than ten days).  The exigency abated upon the expiration of the TRO.  However, after allowing the TRO to expire without moving for an extension, the FTC filed (Doc. 57) an "Emergency Motion to Reinstate and Continue the Provisions of the Temporary Order Entered on March 26, 2009, with Respect to the Defendants Home Assure LLC, B Home Associates, LLC, Michael Trimarco, and Nicholas Molina."

The parties dispute the significance or propriety of the magistrate judge's conclusion that the proposed asset freeze is "overbroad." A de novo review of the record and the parties' objections discloses that (1) any overbreadth in the proposed asset freeze is a consequence of Trimarco and Molina's failure to fully comply with the disclosure provisions of the TRO and (2) a balance of the equities that accords proper weight to the public interest[4] in securing effective final relief for consumers favors entry of an asset freeze. Otherwise, the parties' objections (Docs. 61, 62) either are unfounded or otherwise require no different resolution of the motion and are **OVERRULED,** and the magistrate judge's report and recommendation (Doc. 54) is **ADOPTED**. Accordingly, to the extent that the motion for a preliminary injunction requests an order enjoining the defendants Trimarco, Molina, Home Assure LLC, and B Home Associates, LLC, from engaging in the deceptive acts or practices alleged in the complaint, the motion is denied. To the extent that the FTC requests an asset freeze, expedited discovery and financial disclosure, and related equitable relief as to these defendants, the motion is granted as explained below.

The magistrate judge recommends that the court consider "invoking its inherent authority to impose a reasonable asset freeze, one properly limited in scope as determined by the equitable relief actually available to the FTC should it prevail on the merits in this case." Trimarco and Molina argue that an asset freeze is unavailable as a

_____

[4] See FTC v. World Travel Vacation Brokers, 861 F.2d 1020, 1029 (7th Cir.1988) ("[I]n balancing [the] equities [in an action under Section 13(b)], while private concerns may certainly be considered, public equities must receive far greater weight."). Trimarco and Molina correctly observe (Doc. 62 at 13; Doc. 59 at 5) that an asset freeze is essentially a preliminary injunction and therefore subject to the requirements for preliminary injunctive relief.

"stand-alone" remedy.  Although finding no controlling authority on the point, the

magistrate judge (a) notes both persuasive authority[5] rejecting the contention and

Eleventh Circuit precedent broadly construing the district court's equitable power in an

action under Section 13(b) and (b) concludes that "the court may order an asset freeze

in the appropriate circumstances even in the absence of a likelihood of recurrence" of

the alleged deceptive acts or practices.  Finally, the magistrate judge notes that the

scope of an appropriate asset freeze depends on the equitable relief ultimately available

if the FTC prevails on the merits.  In their papers supporting and opposing Trimarco and

Molina's "Motion for a 'Nexus' Hearing and to Modify and/or Dissolve the Asset Freeze

Imposed Pursuant to the March 26, 2009, ex parte Temporary Restraining Order"

(Doc. 23) and the FTC's "Emergency Motion to Reinstate and Continue the Provisions

of the Temporary Order Entered on March 26, 2009, with Respect to the Defendants

Home Assure LLC, B Home Associates, LLC, Michael Trimarco, and Nicholas Molina"

(Doc. 57) and again in their objections, the parties dispute the proper measure of

restitution and consumer redress under Section 13(b).  In essence, Trimarco and Molina

argue that CFTC v. Wilshire Investment Management Corp., 531 F.3d 1339 (11th Cir.

2008), limits monetary redress to a defendant's net profit from a deceptive practice that

---

[5] See FTC v. Evans Prods. Co., 775 F.2d 1084, 1088-89 (9th Cir. 1985); In re Evans Prods. Co., 60 B.R. 863, 867 (S.D. Fla. 1986) ("The district court's power under § 13(b) to exercise the full range of equitable remedies, including rescission and restitution, is not diminished by the fact that primary injunctive relief might not be granted."); see also FTC v. Nat'l Urological Group, No. 1:04-CV-3294-CAP, 2008 WL 2414317, *32 n.27 (N.D. Ga. June 4, 2008) ("[T]he defendants argue that all monetary relief requested is contingent upon the grant of a permanent injunction; therefore, they claim that if the court does not grant a permanent injunction, it cannot award monetary redress. This contention is not correct. Even if the primary injunctive relief is not requested, the court is still entitled to grant other equitable remedies."); FTC v. Sw. Sunsites, Inc., 665 F.2d 711, 718 (5th Cir. 1982) ("[It is] indisputably clear that a grant of jurisdiction such as that contained in Section 13(b) carries with it the authorization for the district court to exercise the full range of equitable remedies traditionally available to it.") (internal citations omitted).

violates the FTC Act, which profit in this case equals zero (or, at most, Trimarco and Molina's salary from Home Assure, LLC).

In an action brought under Section 13(b), a district court may grant preliminary relief, including an asset freeze, if necessary to ensure the possibility of effective final relief. See FTC v. U.S. Oil & Gas Corp., 748 F.2d 1431, 1434 (11th Cir. 1984).[6] Section 13(b) imposes no limit on a district court's equitable powers, which include "the power to grant restitution and disgorgement." FTC v. Gem Merch. Corp., 87 F.3d 466, 469-70 (11th Cir. 1996) (holding that "section 13(b) permits a district court to order a defendant to disgorge illegally obtained funds").[7] Because the public interest is involved, a district court's equitable powers in an enforcement action under Section 13(b) "assume an even broader and more flexible character than when only a private controversy is at stake." Gem Merch. Corp., 87 F.3d at 469 (quoting Porter v. Warner Holding Co., 328 U.S. 395, 398 (1946)); see also AT&T Broadband v. Tech Commc'ns, Inc., 381 F.3d 1309, 1316 (11th Cir. 2004).

Final relief under Section 13(b) may include a refund to the consumer of the full amount paid by the consumer to the defendants. See FTC v. Febre, 128 F.3d 530, 536 (7th Cir. 1997) ("Courts have regularly awarded, as equitable ancillary relief, the full amount lost by consumers."); McGregor v. Chierico, 206 F.3d 1378, 1388 (11th Cir. 2000) (affirming contempt sanction in the amount of gross sales and stating in dictum

---

[6] See also CFTC v. Levy, 541 F.3d 1102, 1114 (11th Cir. 2008) ("[A] district court may freeze a defendant's assets to ensure the adequacy of a disgorgement remedy."); SEC v. ETS Payphones, Inc., 408 F.3d 727, 734 (11th Cir. 2005) ("[T]he asset freeze is justified as a means of preserving funds for the equitable remedy of disgorgement.").

[7] See also FTC v. Verity Int'l, Ltd., 443 F.3d 48, 66 (2d Cir. 2006) ("Although this provision does not expressly provide for restitution, several courts, including the Fifth, Seventh, Eighth, Ninth, and Eleventh Circuits, have concluded that § 13(b) of the FTC Act allows restitution or other ancillary equitable relief.") (collecting cases).

that, "[i]n the underlying action, the sanctions imposed by the district court would have been authorized by Section 13(b)"); FTC v. Freecom Commc'ns, Inc., 401 F.3d 1192, 1206 (10th Cir. 2005) ("[G]ross receipts from consumer sales [is] a proper beginning point for the calculation of sanctions in a § 5 case."); FTC v. Stefanchik, No. 07-35359, ___ F.3d ___, 2009 WL 636510, *6 (9th Cir. Mar. 13, 2009) ("[B]ecause the FTC Act is designed to protect consumers from economic injuries, courts have often awarded the full amount lost by consumers rather than limiting damages to a defendant's profits."); FTC v. Transnet Wireless Corp., 506 F. Supp. 2d 1247, 1271 (S.D. Fla. 2007) ("In a deceptive sales scheme, restitution may be measured by the amount of loss suffered by the victim and the return to status quo.").  In a Section 13(b) action of this kind, "the proper amount of restitution has been held to be the purchase price of the relevant product or business opportunity, less any refunds."  FTC v. Nat'l Urological Group, No. 1:04-CV-3294-CAP, 2008 WL 2414317, *33 (N.D. Ga. June 4, 2008) (citation and internal quotation marks omitted).[8]

CFTC v. Wilshire Inv. Management Corp., 531 F.3d 1339 (11th Cir. 2008), compels no different result.  Wilshire holds that in an enforcement action under 7 U.S.C. § 13a-1 the proper measure of restitution is not the full amount lost by defrauded customers but "the amount that [the defendants] wrongfully gained by their misrepresentations."  531 F.3d at 1345.  However, under Section 13(b) of the FTC Act "the amount that [the defendants] wrongfully gained" may equal the amount consumers paid the defendants.  Wilshire's statement that "[t]he equitable remedy of restitution

---

[8]  See also FTC v. Peoples Credit First, LLC, No. 8:03-cv-2353-TBM, 2005 WL 3468588, *7 n.18 (M.D. Fla. Dec. 18, 2005); FTC v. Think Achievement Corp., 144 F. Supp. 2d 1013, 1019 (N.D. Ind. 2000) ("In determining the amount of equitable monetary relief, the amount of restitution equals the amount paid by the consumer victims of an illegal scheme, less any amounts previously returned to the victims.").

does not take into consideration the plaintiff's losses, but only focuses on the defendant's unjust enrichment," 531 F.3d at 1345, admits of the broader interpretation urged by Trimarco and Molina.[9]  However, neither this statement nor Wilshire's citation of FTC v. Verity International, Ltd., 443 F.3d 48 (2d Cir. 2006), for the proposition that "'the appropriate measure for restitution is the benefit unjustly received by the defendants[,]' not the amount of the customer loss," 531 F.3d at 1345 (quoting Verity, 443 F.3d at 68)), unambiguously demonstrates an intent to alter the available equitable remedy in a statutory enforcement action.

In Verity, the district court erred under Section 13(b) in measuring restitution by the full consumer loss because the amount included sums paid to a middleman. Accordingly, Verity remands with instructions "to further consider how much of this sum was in fact received by the [defendants] and is therefore subject to an order of restitution," Verity, 443 F.3d at 68 (emphasis added).  Verity adds no instruction to consider a reduction for marketing expense, labor, or other cost.  Above all, Verity expressly states that, if the consumer buys goods or services directly from the defendant, as here, "it is not inaccurate to say that restitution is measured by the consumer's loss." Verity, 443 F.3d at 68 (citing, inter alia, FTC v. Gem Merch. Corp., 87

---

[9]  Additionally, an unmistakable (although imperfect) resemblance exists between (i) consumer redress in the amount of gross revenues and (ii) traditional money damages.  See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 333 (1999) (absent a lien or equitable interest in the assets, district court lacks authority to issue a preliminary injunction preventing disposal of assets pending adjudication of a claim for money damages); Rosen v. Cascade Int'l, Inc., 21 F.3d 1520, 1531 (11th Cir. 1994) (district court lacks authority to issue a preliminary injunction freezing a defendant's assets in a case seeking only money damages.).  But cf. SEC v. ETS Payphones, Inc., 408 F.3d 727, 734-35 (11th Cir. 2005) (Grupo Mexicano does not preclude a freeze to preserve assets for equitable relief, e.g., disgorgement); see also Grupo Mexicano, 527 U.S. at 326 (noting that "courts of equity will go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved" (citations and internal quotation marks omitted); SEC v. Cavanagh, 445 F.3d 105, 118 n.29 (2d Cir. 2006) (declining to decide "what additional latitude a federal court might have [under Grupo Mexicano] in awarding equitable remedies in cases like this one, which implicate a broader public interest.").

F.3d 466, 469-70 (11th Cir.1996)).[10]  In short, <u>Wilshire</u> does not unambiguously support the proposition that final relief under Section 13(b) cannot include consumer redress in the amount of gross revenues less refunds, and weighty authority supports the contrary view, which also comports with the deterrent purpose of Section 13(b).[11]

Finally, Trimarco and Molina's contention that restitution under Section 13(b) is limited to specific assets directly traceable to the alleged violations fails to persuade. Although not without support,[12] the contention (a) ignores the availability of individual liability[13] for corporate violations of the FTC Act[14] and (b) assumes that <u>Great-West Life & Annuity Insurance Co. v. Knudson</u>, 534 U.S. 204 (2002), a case interpreting Section 502(a)(3) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a)(3), fundamentally alters federal equity jurisprudence in statutory enforcement

---

[10] <u>Cf.</u> <u>FTC v. Febre</u>, 128 F.3d 530, 536 (7th Cir. 1997) (describing <u>FTC v. Gem Merchandising Corp.</u>, 87 F.3d 466 (11th Cir. 1996), somewhat loosely as "affirming an award of damages as calculated by consumers' losses and an order of disgorgement to the Treasury"); <u>FTC v. Global Mktg. Group, Inc.</u>, 594 F. Supp. 2d 1281, 1290 (M.D. Fla. 2008) ("The Eleventh Circuit has held that the full amount lost by consumers is an appropriate award of damages.") (citing <u>Gem Merch. Corp.</u>, 87 F.3d at 470.); George P. Roach, <u>A Default Rule of Omnipotence: Implied Jurisdiction and Exaggerated Remedies in Equity for Federal Agencies</u>, 12 Fordham J. Corp. & Fin. L. 1, 95 (2007) (noting that "[t]he key opinions in the group of cases that fully support the FTC position include <u>Febre</u> and <u>Gem</u>" but criticizing those decisions for their purported "serious errors").

[11] <u>See</u> <u>FTC v. Gem Merch. Corp.</u>, 87 F.3d 466, 470 (11th Cir. 1996) (concluding that Section 13(b) permits a district court to order a defendant to disgorge illegally obtained funds and stating that to hold otherwise would "undermine the deterrence function of section 13(b)").

[12] <u>See, e.g.</u>, <u>In re Qwest Commc'ns Int'l, Inc. Sec. Litig.</u>, 243 F. Supp. 2d 1179, 1183-84 (D. Colo. 2003); <u>cf.</u> <u>United States ex rel Rahman v. Oncology Assocs.</u>, 198 F.3d 489, 496-97 (4th Cir. 1999).

[13] <u>See</u> <u>Gem Merch. Corp.</u>, 87 F.3d at 469.

[14] <u>See</u> <u>FTC v. Windward Mktg., Ltd.</u>, No. 1:96-cv-615 FMH, slip op. at 5-6 (N.D. Ga. 1997) ("Because of joint and several liability, a defendant may be called upon to redress the harm to consumers in an amount far exceeding the value of assets currently held by that defendant and that are traceable to the illegal enterprise.  Indeed, a defendant who is jointly and severally liable may be required to redress the entire consumer injury.  Because each defendant is jointly and severally liable, the Court finds that tracing an asset to the illegal activities of the defendant is not a prerequisite to distributing that asset as part of an order of consumer redress under § 13(b).").

actions involving the public interest and overrules <u>Porter v. Warner Holding Co.</u>, 328 U.S. 395 (1946).

The FTC persuasively argues for freezing Trimarco's and Molina's assets to the extent of $3,721,807.85 each. The defendants present evidence that this figure represents Home Assure, LLC's gross sales less refunds,[15] which is a reasonable approximation of potential consumer redress if the FTC prevails against Trimarco and Molina. Although the amount (Doc. 61 at 21) "may be overly broad to the extent that any exempt assets are frozen," any overbreadth in this respect is evidently the fault of Trimarco and Molina, whose insufficiently explained failure to fully comply with the disclosure provisions of the TRO (despite the denial of their motion for relief from those disclosure provisions) prevents a more precise determination of the appropriate amount.[16] Upon full compliance with the disclosure provisions of this order, Trimarco and Molina may move to exclude or exempt additional assets.

Additionally, Trimarco and Molina may move to substitute a surety bond in the amount $3,721,807.85 for the asset freeze.[17] Trimarco or Molina may also seek immediate relief from any extraordinary hardship resulting from the asset freeze by filing an emergency motion (designated as such) for selective relief from the asset freeze. Upon filing an emergency motion, the movant shall immediately notify by telephone both

---

[15] <u>See</u> Doc. 38-6 (Declaration of John Kubinec) ¶ 9; Doc. 38-4 (Declaration of Michael Grieco) ¶ 29.

[16] The FTC asserted before the magistrate judge and states (Doc. 58 ¶ 3; <u>see also</u> Doc. 58-2 at 2) in its papers that Trimarco and Molina failed to comply with the disclosure provisions of the TRO (Doc. 61 at 14 n.4) "including but not limited to the completion of Attachments A and B to the TRO." Although emphasizing their assistance in arranging for the transfer of Home Assure's financial information to the FTC and the short time available to them, Trimarco and Molina (<u>see</u> Doc. 59 at 6 n.5) do not respond that they complied with the disclosure provisions or describe any further efforts to comply.

[17] Molina declares (Doc. 38-2 ¶ 13) that the March 26, 2009, order froze all his assets "including accounts with assets that far exceed the total gross revenues of Home Assure."

counsel for the FTC and the Clerk's office, shall comply with Local Rule 3.01(g), and shall state (1) the movant's good faith efforts to obtain the agreement of counsel for the FTC as to the resolution of the motion and (2) whether the movant has fully complied with the disclosure provisions of this order. The motion shall be supported by specific facts demonstrating the extraordinary hardship, shall describe the exact relief sought, and shall attach a proposed order.

Finally, Trimarco and Molina argue that, because in the short time available to them, Trimarco and Molina have presented some evidence contradicting certain assertions in the consumer complaints and other materials submitted in support of the motion for a preliminary injunction, "the Court should presume that Defendants can (and will) dissect most if not all of the FTC's purported evidence through the normal course of discovery" (Doc. 62 at 10). Although no such presumption is available, Trimarco and Molina may move for leave to conduct expedited discovery.

In summary, the FTC's motion (Doc. 37) is **GRANTED IN PART** and **DENIED IN PART**. To the extent that the FTC's motion for a preliminary injunction requests an order enjoining Trimarco, Molina, Home Assure LLC, and B Home Associates, LLC, from further violations of the FTC Act (that is, enjoining the conduct described in Section I of the proposed preliminary injunction [Doc. 37 at 7]), the motion is **DENIED**. To the extent that the FTC requests an asset freeze, expedited discovery and financial disclosure, re-appointment of the temporary receiver, and related equitable relief, the motion (Doc. 37) is **GRANTED** as follows.

Upon consideration of all the evidence submitted by the parties, the court adjudges:

1.     The FTC is likely to prevail on the merits of this action as to Trimarco, Molina, Home Assure, LLC, and B Home Associates, LLC, doing business as Expert Foreclosure.

2.     The Defendants' activities as alleged in the complaint are in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

3.     There is good cause to believe that immediate and irreparable injury, loss, or damage to the court's ability to grant final and effective relief for consumers in the form of monetary redress will occur from the sale, transfer, or other disposition or concealment by the Defendants of assets or records during the pendency of this action unless the Defendants are immediately restrained and enjoined by order of this court. There is thus good cause for an asset freeze to ensure the possibility of consumer redress and other effective final relief.

4.     Good cause exists for requiring the Defendants to produce an accounting of their business assets, sworn financial statements, profit-and-loss statements, and sworn personal financial statements.

5.     Good cause exists for the re-appointment of a Temporary Receiver for Defendants Home Assure, LLC ,and B Home Associates, LLC, doing business as Expert Foreclosure.

6.     Balancing the equities and considering the FTC's likelihood of success on the merits, the entry of this order as set forth below is in the public interest.

7.     No security is required of any agency of the United States for issuance of a preliminary injunction.  Fed. R. Civ. P. 65(c).

## DEFINITIONS

For purposes of this order, the following definitions shall apply:

1.      "Asset" or "Assets" means any legal or equitable interest in, right to, or claim to, any real and personal property, including but not limited to chattels, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, premises, mail or other deliveries, shares of stock, lists of consumer names, inventory, checks, notes, accounts, credits, receivables, funds, and all cash, wherever located.

2.      "Financial institution" means any bank, savings and loan institution, credit union, financial institution, brokerage house, escrow agent, money market or mutual fund, telephone or other common carrier, storage company, trustee or any other person, partnership, corporation, or other legal entity maintaining or having control of any records, accounts, or other assets, owned directly or indirectly, of record or beneficially, by any Named Defendant, including accounts or other assets which any Named Defendant may control by virtue of being a signatory on said accounts.

3.      "Individual Defendants" means Brian Blanchard, Michael Grieco, Michael Trimarco, and Nicolas Molina.

4.      "Business Defendants" means the Defendants Home Assure, LLC, and B Home Associates, LLC, doing business as Expert Foreclosure, and their successors and assigns.

5.      "Defendants" means all of the Individual Defendants and the Business Defendants, individually, collectively, or in any combination.

6.      "Named Defendants" means Michael Trimarco, Nicolas Molina, and the Business Defendants, individually, collectively, or in any combination.

7.     "Receivership Defendants" means the Business Defendants and any entity or name through which they do business.

8.     "Document" is synonymous in meaning and equal in scope to the usage of the term in Rule 34(a), Federal Rules of Civil Procedure, and includes both documents and electronically stored information, including but not limited to writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations from which information can be obtained and translated, if necessary, through detection devices into reasonably usable form.  A draft or non-identical copy is a separate document within the meaning of the term "document."

9.     "Person" means a natural person, an organization or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

10.     The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary, and to make the applicable phrase or sentence inclusive rather than exclusive.

## I.    ASSET FREEZE

**IT IS ORDERED** that the Named Defendants and their officers, agents, employees, and corporations, and those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, including financial institutions, whether acting directly or through any trust, corporation, subsidiary, division or other device, including but not limited to fictitious business names, are hereby restrained and enjoined from:

A.     Transferring, liquidating, converting, encumbering, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, pledging, loaning, granting a

lien or security interest or other interest in, or otherwise disposing of any funds, credit instruments, real or personal property, accounts, contracts, lists of consumer names, shares of stock, or other assets, wherever located, including outside the United States, that are:

1.      Owned or controlled by any Defendant, in whole or in part, including but not limited to any assets held by, for, or in the name of the Defendants at any bank or savings and loan institution or credit card processing agent, or with any broker-dealer, escrow agent, title company, commodity trading company, precious metal dealer, merchant account processor, check processor, or other financial institution, depository of any kind, or business entity, including but not limited to, Bank of America, NA, Wachovia Bank, NA, and MoneyGram, International;

2.      In the actual or constructive possession of any Defendant;

3.      Held by any agent of any Defendant as a retainer for the agent's provision of services to any Defendant; or

4.      Owned, controlled by, or in the actual or constructive possession of any corporation, partnership, limited liability company, or other entity directly or indirectly owned, managed, or controlled by or under common control with any Defendant.

B.      Opening or causing to be opened any safe deposit boxes, titled, singly or jointly, in the name of any Defendant, or subject to access by any Defendant;

C.      Cashing any checks or depositing any payments received from customers of the Defendants;

D.      Incurring charges on any credit card issued in the name, singly or jointly, of any Defendant;

E.     Collecting, opening, or causing to be collected or opened, any mail received by or on behalf of the Receivership Defendants, at any address, including but not limited to the following: 2010 Drew Street, Clearwater, Florida 33765, and failing to turn over any such mail to the Temporary Receiver;

F.     Obtaining a personal or secured loan; and

G.     Incurring liens or other encumbrances on real property, personal property, or other assets of any Defendant or in the name of any Defendant, singly or jointly.

The assets affected by this Section shall include both existing assets and assets acquired after the effective date of this order.

Provided however, the asset freeze described in this Section shall be limited to an amount equal to the gross sales less any refunds of the Business Defendants:

a.     The assets of Defendants Trimarco, Molina, and Home Assure, LLC, shall be frozen up to $3,721,807.84 each.  Should the assets of any of these Defendants exceed $3,721,807.84, the asset freeze shall not apply to that Defendants' assets exceeding this amount; and

b.     The assets of Defendant Expert Foreclosure are minimal and do not exceed the potential consumer injury and therefore shall remain frozen.

Notwithstanding the provisions of this Section, the Named Defendants may make transfers as directed by the Temporary Receiver appointed by this court, or as otherwise ordered by this court upon proper showing and after notice to counsel for the Commission.

## II.   RETENTION OF ASSETS AND RECORDS HELD BY THIRD PARTIES

**IT IS FURTHER ORDERED** that any financial or brokerage institution, business entity, or person served with a copy of this order that holds, controls, or maintains custody of any account or asset of any Named Defendant, or has held, controlled or maintained custody of any such account or asset at any time since January, 2005, shall:

A.      Prohibit the Named Defendants from withdrawing, removing, assigning, transferring, pledging, encumbering, disbursing, dissipating, converting, selling, or otherwise disposing of any such account or asset except as directed by further order of the court;

B.      Deny the Named Defendants access to any safety deposit box that is:

1.      Titled in the name of any of the Defendants, either individually or jointly; or

2.      Otherwise subject to access by any of the Defendants, either individually or jointly;

C.      Provide counsel for the FTC and the Temporary Receiver, within five (5) business days of receiving a copy of this order, with a sworn statement setting forth:

1.      The identification number and description of each such account or asset titled in the name, individually or jointly, of the Named Defendants, or held on behalf of, or for the benefit of, any Named Defendant;

2.      The balance of each such account, or a description of the nature and value of such asset, as of the close of business on the day on which this order is served, and, if the account or other asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other asset was remitted;

3.     The identification of any safe deposit box that is either titled in the name, individually or jointly, of the Named Defendants, or otherwise subject to access by any Named Defendant; and

D.     Upon the request of the Temporary Receiver or the Commission, provide the Temporary Receiver and the Commission within forty-eight (48) hours, with copies of all records or other documentation pertaining to any account or asset of any Named Defendant, including but not limited to originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs; and

E.     Cooperate with all requests of the Temporary Receiver relating to implementation of this order, including transferring funds or other assets at the Temporary Receiver's direction and producing records related to the accounts or assets of any Named Defendant.

**III.     ASSETS AND DOCUMENTS LOCATED IN FOREIGN COUNTRIES**

**IT IS FURTHER ORDERED** that the Named Defendants shall, if they have not already done so:

A.     Within forty-eight (48) hours following the service of this order, provide counsel for the Commission and the Temporary Receiver with a full accounting of all documents and assets that are located outside of the territory of the United States of America and are held by or for the benefit of the Named Defendants or are under their direct or indirect control, whether jointly, severally, or individually;

B.     Prevent any transfer, disposition, or dissipation whatsoever of any such assets or funds; and

C.    Provide counsel for the Commission with access to records and documents of the Named Defendants held by financial institutions outside the territorial United States of America, by signing and delivering to counsel for the Commission the Consent of Release of Financial Records attached as Attachment A to the TRO within forty-eight (48) hours of service of this order.

**IT IS FURTHER ORDERED** that the Named Defendants are hereby restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of the Named Defendants' foreign assets, including but not limited to:

A.    Sending any statement, letter, facsimile, e-mail or wire transmission, telephoning or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement; and

B.    Notifying any trustee, protector, or other agent of any foreign trust or other related entities of the existence of this order.

## IV.    EXPEDITED DISCOVERY

**IT IS FURTHER ORDERED** that the Commission and the Temporary Receiver are granted leave to conduct certain expedited discovery, and that, commencing with the time and date of this order, in lieu of the time periods, notice provisions, and other requirements of Rules 26, 30, 34, and 45 of the Federal Rules of Civil Procedure, expedited discovery shall proceed as follows:

Pursuant to Fed. R. Civ. P. 30, the Commission may take depositions upon oral examination concerning the nature, location, status, and extent of the Named Defendants' assets; the status and location of documents reflecting the Named

Defendants' business transactions; and compliance with this order, on two (2) days notice of any such deposition. Depositions may be taken Monday through Saturday. Deposition transcripts that have not been signed by the witness may be used for purposes of any further proceeding in this action.

Provided, that this Subsection permitting expedited deposition discovery concerning the nature, location, status, and extent of the Named Defendants' assets, the status and location of documents reflecting the Named Defendants' business transactions, and compliance with this order, shall not be construed in any manner to preclude FTC's right to take subsequent depositions of the same witnesses on the merits of this action.

Provided, further, that any deposition taken pursuant to this Subsection is in addition to, and not subject to, the presumptive limits on depositions set forth in Fed. R. Civ. P. 30(a)(2)(A).

Pursuant to Fed. R. Civ. P. 34(b), the Named Defendants shall produce all documents requested by the Commission within two (2) days of service of such request, with production of documents made to Commission counsel, or to such other person or place as counsel for the Commission may direct in writing.

Provided, that in the event any of the Named Defendants' documents have been removed from the Named Defendants' premises by, and are in the possession of another law enforcement or investigative agency, the Commission may have immediate access to such documents for purposes of inspection, indexing, and copying, subject to the agency consenting to access by the Commission.

## V.    FINANCIAL REPORTS

**IT IS FURTHER ORDERED** that the Named Defendants, if they have not already done so, within forty-eight (48) hours of service of this order, shall prepare and deliver to the Temporary Receiver and to counsel for the Commission:

A.    Completed financial statements on the forms attached to the TRO as Attachments B and C, for each Named Defendant, and for each business entity (whether or not incorporated) under which they conduct any business, or of which any Named Defendant is an owner or officer, and for each trust of which any Named Defendant is a trustee.  The financial statements shall be accurate as of the date of entry of this order; and

B.    All current accountants' reports; all federal tax returns filed since January 1, 2007; documents indicating title to real or personal property; and other indicia of ownership that are now in any of the Named Defendants' actual or constructive possession.

## VI.    IDENTIFYING INFORMATION RELATING TO ACCOUNTANTS, FINANCIAL PLANNERS, INVESTMENT ADVISORS, STOCK BROKERS AND OTHERS

**IT IS FURTHER ORDERED** that the Named Defendants, if they have not already done so, within forty-eight (48) hours after service of this order, shall provide counsel for the Commission and the Temporary Receiver: (1) the name, address and telephone number for each accountant, financial planner, investment advisor, stock broker or other individual, corporation, limited liability company, or partnership whom they hired for personal advice or services, including but not limited to preparation of tax returns and investment advice, since January 1, 2007, and (2) the name, address and telephone number for each accountant, financial planner, investment advisor, stockbroker or other

individual, corporation, limited liability company, or partnership who or which was hired on behalf of the Named Defendants since January 1, 2007.

## VII.    RECORD KEEPING

**IT IS FURTHER ORDERED** that the Named Defendants and their officers, agents, employees, and corporations, and those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, including but not limited to fictitious business names, are hereby restrained and enjoined from:

A.    Failing to create and maintain documents that, in reasonable detail, accurately, fairly, and completely reflect their incomes, disbursements, transactions, and use of money;

B.    Destroying, erasing, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any contracts, accounting data, correspondence, advertisements, computer tapes, discs, or other computerized records, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, copies of federal, state, or local business or personal income or property tax returns, and other documents or records of any kind that relate to the business practices or business or personal finances of the Named Defendants.

## VIII.    RE-APPOINTMENT OF TEMPORARY RECEIVER

**IT IS FURTHER ORDERED** that Robb Evans and Associates, LLC, 11450 Sheldon Street, Sun Valley, California 91352-1121, is re-appointed Temporary Receiver

for the Receivership Defendants, with the full power of an equity receiver for the Receivership Defendants, and all of the funds, properties, premises, accounts, and other assets directly owned by the Receivership Defendants. The Temporary Receiver shall be solely the agent of this court in acting as Temporary Receiver under this order. The Temporary Receiver shall be accountable directly to this court. The Temporary Receiver shall comply with all Local Rules of this court governing receivers.

## IX. RECEIVERSHIP DUTIES AND AUTHORITY

**IT IS FURTHER ORDERED** that the Temporary Receiver is directed and authorized to accomplish the following:

A. Assume full control of the Receivership Defendants by removing, as the Temporary Receiver deems necessary or advisable, any director, officer, independent contractor, employee, or agent of any of the Receivership Defendants, including any individual, from control of, management of, or participation in, the affairs of the business of the Receivership Defendants and manage and administer the business of the Receivership Defendants until such further order of this court by performing all incidental acts that the Temporary Receiver deems to be advisable or necessary, which includes retaining or hiring any employees, independent contractors or agents;

B. Collect, marshal, and take exclusive custody, control and possession of all funds, property, books and records, accounts, mail, and other assets and documents of, or in the possession, custody, or under the control of, the Receivership Defendants, wherever situated, including but not limited to, 2010 Drew Street, Clearwater, Florida 33765. The Temporary Receiver's authority to collect any and all mail relating to the affairs of the Receivership Defendants in the possession, custody, or under the control of, the Defendants, shall extend to mail in the possession of any third parties. The

Temporary Receiver shall have full power to change mailing addresses of the Receivership Defendants. The Temporary Receiver shall have full power to change any locks on any real or personal property of the Receivership Defendants. The Temporary Receiver shall have full power to divert mail, sue for, collect, receive and take possession of all goods, chattels, rights, credits, moneys, effects, land, leases, books, records, work papers, and records of accounts, including computer-maintained information, and other papers and documents of the Receivership Defendants, including documents related to customers or clients whose interests are now held by or under the direction, possession, custody or control of the Defendants or under the control of any third party for the benefit of the Defendants. The Temporary Receiver shall assume control over the income and profits therefrom and all sums of money now or hereafter due or owing to the Receivership Defendants.

Provided, however, the Temporary Receiver shall not attempt to collect any amount from a consumer if the Temporary Receiver believes the consumer was a victim of the deceptive acts or practices alleged in the Complaint in this matter, without prior court approval;

C.     Take all steps necessary to secure the business premises of the Receivership Defendants, including but not limited to all such premises located at 2010 Drew Street, Clearwater, Florida 33765. Such steps may include but are not limited to the following, as the Temporary Receiver deems necessary or advisable: (1) serving and filing this order; (2) completing a written inventory of all Receivership assets; (3) obtaining pertinent information from all employees and other agents of the Receivership Defendants, including but not limited to the name, home address, social security number, job description, method of compensation, and all accrued and unpaid

commissions and compensation of each such employee or agent; (4) photographing or videotaping all portions of the Receivership Defendants' business premises; (5) securing the Receivership Defendants' business premises by changing the locks on any real or personal property of the Receivership Defendants; (6) disconnecting any computer modems or other means of access to the computer or other records maintained at the Receivership Defendants' business premises; (7) requiring any persons present on the Receivership Defendants' business premises at the time this order is served to vacate the premises, to provide the Temporary Receiver with proof of identification, or to demonstrate to the satisfaction of the Temporary Receiver that such persons are not removing from the premises documents or assets of the Defendants. Law enforcement personnel, including but not limited to, local police or sheriffs, may assist the Temporary Receiver in implementing these provisions in order to keep the peace and maintain security;

D.     Take all reasonable steps to halt immediately the debit of consumer bank accounts or charges to consumer credit cards that in the Temporary Receiver's good faith determination were procured by use of the unfair or deceptive acts or practices alleged in the Complaint in this matter.

E.     Conserve, hold, and manage all Receivership assets, and perform all acts necessary or advisable to preserve the value of those assets, in order to prevent any irreparable loss, damage, or injury to consumers or to creditors of the Receivership Defendants, including but not limited to obtaining an accounting of the assets and preventing transfer, withdrawal, or misapplication of assets;

F.     Enter into contracts and purchase insurance as advisable or necessary, including but not limited to: (1) the retention and employment of investigators, attorneys,

or accountants of the Temporary Receiver's choice, including without limitation members and employees of the Temporary Receiver's firm, to assist, advise and represent the Temporary Receiver, and (2) the movement and storage of any equipment, furniture, records, files, or other physical property of the Receivership Defendants;

G.     Prevent the inequitable distribution of the Receivership assets, and determine, adjust, and protect the interests of consumers and creditors who have transacted business with the Defendants;

H.     Have the sole legal authority to hire legal counsel on behalf of the Receivership Defendants;

I.     Make payments and disbursements from the Receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this order.  The Temporary Receiver shall apply to the court for prior approval of any payment of any debt or obligation incurred by any Receivership Defendant prior to the date of entry of the TRO, except payments that the Temporary Receiver deems necessary or advisable to secure assets of the Receivership Defendants, such as rental payments;

J.     Institute, prosecute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal, or foreign courts, or arbitration proceedings as the Temporary Receiver deems necessary and advisable to preserve or recover the assets of the Receivership Defendants or that the Temporary Receiver deems necessary and advisable to carry out the Temporary Receiver's mandate under this order;

K.     Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted in the past or in the future against the Temporary Receiver in his role as Temporary Receiver, or against the Defendants that the Temporary Receiver deems necessary and advisable to preserve the assets of the Receivership Defendants or that the Temporary Receiver deems necessary and advisable to carry out the Temporary Receiver's mandate under this order;

L.     Continue and conduct the business of the Receivership Defendants in such manner, to such extent, and for such duration as the Temporary Receiver may in good faith deem to be necessary or appropriate to operate the business profitably and lawfully, if at all; provided that the continuation and conduct of the business shall be conditioned upon the Temporary Receiver's good faith determination that the business can be lawfully operated at a profit using the assets of the Receivership estate;

M.     Issue subpoenas to obtain documents and records pertaining to the Receivership, and conduct discovery in this action on behalf of the Receivership estate;

N.     Open one or more bank accounts as designated depositories for funds of the Receivership Defendants.  The Temporary Receiver shall deposit all funds of the Receivership Defendants in such a designated account and shall make all payments and disbursements from the Receivership estate from such an account;

O.     Maintain accurate records of all receipts and expenditures that he makes as Temporary Receiver;

P.     Cooperate with reasonable requests for information or assistance from any state or federal law enforcement agency;

Q.     Maintain the chain of custody of all of Defendants' records in his possession, pursuant to procedures to be established by the Temporary Receiver in writing with the approval of the Commission; and

R.     Prepare and submit periodic Reports to this court and to the parties forty-five (45) days following the entry of this order and seven (7) days prior to the dissolution of the Receivership, or at any other time as the court shall order, describing the Temporary Receiver's activities in connection with carrying out the Temporary Receiver's obligations and responsibilities under this order.

## X.     COOPERATION WITH THE TEMPORARY RECEIVER

**IT IS FURTHER ORDERED** that the Named Defendants and their officers, agents, employees, and corporations, and those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, including but not limited to fictitious business names, shall fully cooperate with and assist the Temporary Receiver.  The Named Defendants' cooperation and assistance shall include but not be limited to providing any information to the Temporary Receiver that the Temporary Receiver deems necessary to exercising the authority and discharging the responsibilities of the Temporary Receiver under this order; providing any password or entry code required to access any computer or electronic files of the Defendants in any medium; or advising all persons who owe money to the Receivership Defendants that all debts should be paid directly to the Temporary Receiver.  The Named Defendants are hereby restrained and enjoined from directly or indirectly:

A.     Transacting any of the business of the Receivership Defendants;

B.      Destroying, secreting, defacing, transferring, or otherwise altering or disposing of any documents of the Defendants, including but not limited to books, records, accounts, or any other papers of any kind or nature;

C.      Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Defendants or the Temporary Receiver;

D.      Excusing debts owed to the Defendants;

E.      Failing to notify the Temporary Receiver of any asset, including accounts, of any Receivership Defendant held in any name other than the name of such Receivership Defendant, or by any person or entity other than such Receivership Defendant, or failing to provide any assistance or information requested by the Temporary Receiver in connection with obtaining possession, custody, or control of such assets; or

F.      Doing any act or refraining from any act whatsoever to interfere with the Temporary Receiver taking custody, control, possession, or managing of Receivership Defendants' assets or documents; or to harass or interfere with the Temporary Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this court over the assets or documents of the Receivership Defendants; or to refuse to cooperate with the Temporary Receiver or the Temporary Receiver's duly authorized agents in the exercise of their duties or authority under this order.

## XI.   DELIVERY OF RECEIVERSHIP PROPERTY

**IT IS FURTHER ORDERED** that immediately upon service of this order upon

them, or within a period permitted by the Temporary Receiver, the Named Defendants

and any other person or entity served with a copy of this order shall forthwith or within

such time as permitted by the Temporary Receiver in writing, transfer or deliver

possession, custody, and control of the following to the Temporary Receiver:

A.      All assets and property, owned beneficially or otherwise, wherever situated,

of the Receivership Defendants;

B.      All documents of the Receivership Defendants, including but not limited to

books and records of accounts, all financial and accounting records, balance sheets,

income statements, bank records (including monthly statements, canceled checks,

records of wire transfers, and check registers), client lists, title documents and other

papers;

C.      All assets belonging to members of the public now held by the Receivership

Defendants;

D.      All keys, computer passwords, entry codes and combination locks

necessary to gain or to secure access to any assets or documents of the Receivership

Defendants, including but not limited to access to their business premises, means of

communication, accounts, computer systems, or other property; and

E.      Information identifying the accounts, employees, properties or other assets

or obligations of the Receivership Defendants.

In the event any person or entity fails to deliver or transfer any asset or otherwise

fails to comply with any provision of this Section, the Temporary Receiver may file an

Affidavit of Non-Compliance regarding such failure.  Upon filing of the affidavit, the court

may authorize, without additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the Temporary Receiver.  The writs shall authorize and direct the United States Marshal or any sheriff or deputy sheriff of any county (pursuant to Federal Rule of Civil Procedure 4(c) to seize the asset, document, or other thing and to deliver it to the Temporary Receiver.

## XII.    COMPENSATION OF TEMPORARY RECEIVER

**IT IS FURTHER ORDERED** that the Temporary Receiver and all personnel hired by the Temporary Receiver as herein authorized, including counsel to the Temporary Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this order and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by, or in the possession or control of, or which may be received by the Receivership Defendants.  Said fees and out-of-pocket expenses shall be paid prior to any monetary relief that may be awarded by this court to purchasers of the Defendants' mortgage foreclosure rescue services.  The Temporary Receiver shall file with the court and serve on the parties periodic requests for the payment of such reasonable compensation, which shall exclude the costs of filing and service, with the first such request filed no more than sixty (60) days after the date of this order.  The Temporary Receiver shall not increase the hourly rates used as the basis for such fee applications without prior approval of the court and without prior notice to counsel for the Commission.

## XIII.    WITHDRAWAL OF TEMPORARY RECEIVER

**IT IS FURTHER ORDERED** that the Temporary Receiver and any professional retained by the Temporary Receiver, including but not limited to his or her attorneys and accountants, are hereby authorized to withdraw from their respective appointments or

representations at any time after the date of this order, for any reason in their sole and absolute discretion, by sending written notice seven (7) days prior to the date the Temporary Receiver intends to withdraw to the court and to the parties; and such Temporary Receiver and professionals shall be relieved of all liabilities and responsibilities seven (7) days from the date of such notice or withdrawal.  The written notice shall include an interim report indicating the Temporary Receiver's actions and reflect its knowledge gained.  The report shall also contain the Temporary Receiver's recommendations, if any.

## XIV.   TERMINATION OF RECEIVERSHIP

**IT IS FURTHER ORDERED** that the Receivership created under this order shall expire 90 days from the date of the entry of this order, unless the Commission moves the court to shorten or extend the Receivership.  The Temporary Receiver shall file with the court and serve upon the parties a final report no later than seven (7) days prior to the dissolution of the Receivership.

## XV.   CONSUMER CREDIT REPORTS

**IT IS FURTHER ORDERED** that the Commission may obtain credit reports concerning any Named Defendant pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(1), and that, upon written request, any credit reporting agency from which such reports are requested shall provide them to the Commission.

## XVI.   USE OF ALIASES

**IT IS FURTHER ORDERED** that the Named Defendants are hereby enjoined from using any fictitious, false, or assumed title or name, other than their own proper

name, or otherwise misrepresenting their true identities in the course of business dealings or in publicly filed documents.

### XXVII. SERVICE OF ORDER UPON THIRD-PARTY ASSET HOLDERS

**IT IS FURTHER ORDERED** that copies of this order may be served by any means, including facsimile transmission, upon any financial institution or other entity or person that may have possession, custody, or control of any documents or assets of any Named Defendant, or that may otherwise be subject to any provision of this order. Service upon any branch or office of any financial institution or entity shall effect service upon the entire financial institution or entity.

ORDERED in Tampa, Florida, on April 16, 2009.

_____
**STEVEN D. MERRYDAY**
**UNITED STATES DISTRICT JUDGE**