UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FEDERAL TRADE COMMISSION,

      Plaintiff,

v.                                    CASE NO.: 8:09-cv-547-T-23TBM

HOME ASSURE, LLC, et al.,

      Defendants.

_____/

## **ORDER**

      The plaintiff sued (Doc. 1) on March 24, 2009, for injunctive and other equitable relief under Section 13(b) of the Federal Trade Commission Act (the "FTC Act"), 15 U.S.C. § 53(b), and alleged that the defendants engaged in deceptive conduct in violation of Section 5(a) of the FTC Act.

      Pursuant to Federal Rule of Civil Procedure 55(a), the Clerk defaulted (Doc. 94) the defendant B Home Associates, LLC, doing business as Expert Foreclosure, ("Expert Foreclosure").  By virtue of default, Expert Foreclosure admits the allegations of the complaint.  The plaintiff moves (Doc. 275) for a default judgment and permanent injunction against Expert Foreclosure and submits a proposed injunction (Doc. 275-1). Expert Foreclosure's repeated violations of the FTC Act, failure to admit wrongdoing, ongoing presence on the internet, and easily transferable resources (including domain name, web site, scripts, contracts, and financial worksheets) demonstrate a reasonable likelihood of recidivism and warrant a permanent injunction.  Furthermore, a default

judgment in the amount of $128,112.00 accords with a reasonable estimate of consumer injury.  Accordingly, the motion (Doc. 275) is **GRANTED**.  The Clerk is directed to (1) enter a judgment against Expert Foreclosure in the amount of **$128,112.00**, (2) terminate any pending motion, and (3) close the case.  Additionally, Expert Foreclosure is **PERMANENTLY ENJOINED** as follows:

<u>DEFINITIONS</u>

1.      "Asset" or "assets" means any legal or equitable interest in, right to, or claim to, any real and personal property, including, but not limited to, "goods," "instruments," "equipment," "fixtures," "general intangibles," "inventory," "checks," and "notes" (as these terms are defined in the Uniform Commercial Code), and all chattel, leaseholds, contracts, mail or other deliveries, shares of stock, lists of consumer names, accounts, credits, receivables, funds, reserve funds, and cash, wherever located.

2.      "Assisting others" includes, but is not limited to  (A) performing customer service functions, including, but not limited to, receiving or responding to consumer complaints; (B) formulating or providing, or arranging for the formulation or provision of, any telephone sales script or other marketing material, including, but not limited to, the text of any Internet website, email or other electronic communication; (C) providing names of, or assisting in the generation of lists of, potential customers; (D) performing marketing services of any kind; (E) processing credit and debit card payments; (F) hiring, recruiting, or training personnel; (G) advising or acting as a consultant to others on the commencement or management of a business venture; or (H) acting or serving as an owner, officer, director, manager, or principal of any entity.

3.     "Credit" means the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment.

4.     "Debt relief good or service" means any good, service, plan, or program, including debt management plans, debt settlement, debt negotiation, and for-profit credit counseling, represented, expressly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a consumer and one or more unsecured creditors, servicers, or debt collectors, including but not limited to, a reduction in the balance, interest rate, or fees owed by a consumer to an unsecured creditor, servicer, or debt collector.

5.     "Corporate Defendant" means Defendant B Home Associates, LLC, doing business as Expert Foreclosure, and its successors and assigns.

6.     "Receivership Defendant" means the Corporate Defendant and any entity or name through which it does business.

7.     "Temporary Receiver" means Robb Evans and Associates, LLC, 11450 Sheldon Street Sun Valley CA 91352-1121, as Temporary Receiver for the Receivership Defendant, with the full powers of an equity receiver over the Receivership Defendant as the Court ordered in the April 16, 2009 Order.

8.     "Document" is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a), and includes both documents and electronically stored information, including, but not limited to, writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations from which information can be obtained and translated, if necessary,

through detection devices into reasonably usable form.  A draft or non-identical copy is a separate document within the meaning of the term "document."

9.     "Federal homeowner relief or financial stability program" means any program (including its sponsoring agencies, telephone numbers, and Internet websites) operated or endorsed by the United States government to provide relief to homeowners or stabilize the economy, including but not limited to (A) the Making Home Affordable Program; (B) the Financial Stability Plan; (C) the Troubled Asset Relief Program and any other program sponsored or operated by the United States Department of the Treasury; (D) the HOPE for Homeowners program, any program operated or created pursuant to the Helping Families Save Their Homes Act, and any other program sponsored or operated by the Federal Housing Administration; or (E) any program sponsored or operated by the United States Department of Housing and Urban Development ("HUD"), the HOPE NOW Alliance, the Homeownership Preservation Foundation, or any other HUD-approved housing counseling agency.

10.    "Financial Related Good or Service" means any good, service, plan, or program that is represented, expressly or by implication, to (A) provide any consumer, arrange for any consumer to receive, or assist any consumer in receiving, credit, debit, or stored value cards; (B) improve, or arrange to improve, any consumer's credit record, credit history, or credit rating; (C) provide advice or assistance to any consumer with regard to any activity or service the purpose of which is to improve a consumer's credit record, credit history, or credit rating; (D) provide any consumer, arrange for any consumer to receive, or assist any consumer in receiving, a loan or other extension of credit; (E)

provide any consumer, arrange for any consumer to receive, or assist any consumer in receiving, debt relief goods or services; or (F) provide any consumer, arrange for any consumer to receive, or assist any consumer in receiving any service represented, expressly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a consumer and one or more secured creditors, servicers, or debt collectors.

11.    "For-profit" means any activity organized to carry on business for the profit of the entity engaging in the activity or that of its members.

12.    "Mortgage loan modification or foreclosure relief service" means any good, service, plan, or program that is represented, expressly or by implication, to assist a consumer in any manner to (A) stop, prevent, or postpone any home mortgage or deed of trust foreclosure sale; (B) obtain or arrange a modification of any term of a home loan, deed of trust, or mortgage; (C) obtain any forbearance from any mortgage loan holder or servicer; (D) exercise any right of reinstatement of any mortgage loan; (E) obtain, arrange, or attempt to obtain or arrange any extension of the period within which the owner of property sold at foreclosure may cure his or her default or reinstate his or her obligation; (F) obtain any waiver of an acceleration clause contained in any promissory note or contract secured by a deed of trust or mortgage on a residence in foreclosure or contained in that deed of trust; (G) obtain a loan or advance of funds that is connected to the consumer's home ownership; (H) avoid or ameliorate the impairment of the consumer's credit record, credit history, or credit rating that is connected to the consumer's home ownership; (I) save the consumer's residence from foreclosure; (J)

assist the consumer in obtaining proceeds from the foreclosure sale of the consumer's residence; (K) obtain or arrange a pre-foreclosure sale, short sale, or deed-in-lieu of foreclosure; (L) obtain or arrange a refinancing, recapitalization, or reinstatement of a home loan, deed of trust, or mortgage; (M) audit or examine a consumer's mortgage or home loan application; or (N) obtain, arrange, or attempt to obtain or arrange any extension of the period within which the renter of property sold at foreclosure may continue to occupy the property.  The foregoing shall include any manner of claimed assistance, including, but not limited to, debt, credit, budget, or financial counseling; receiving money for the purpose of distributing it to creditors; contacting creditors or servicers on behalf of the consumer; and giving advice of any kind with respect to filing for bankruptcy.

13.    "Material" means any fact that is likely to affect a person's choice of, or conduct regarding, any good, service, plan, or program.

14.    "Person" means a natural person, an organization, or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

15.    The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary, and to make the applicable phrase or sentence inclusive rather than exclusive.

I.BAN ON LOAN MODIFICATION AND FORECLOSURE RELIEF SERVICES

IT IS HEREBY ORDERED that Defendant Expert Foreclosure and its successors and assigns, whether acting directly or through any other person, corporation, partnership, subsidiary, division, or other device, are permanently restrained and enjoined from

A.      Advertising, marketing, promoting, offering for sale, or selling any mortgage loan modification or foreclosure relief service; and

B.      Assisting others engaged in advertising, marketing, promoting, offering for sale, or selling any mortgage loan modification or foreclosure relief service.

II.PROHIBITED REPRESENTATIONS RELATING TO FINANCIAL RELATED GOODS
AND SERVICES

IT IS FURTHER ORDERED that Defendant Expert Foreclosure, and its successors and assigns, and their officers, agents, servants, employees, and attorneys, and those persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, in connection with the advertising, marketing, promotion, offering for sale or sale of any financial related good or service, are hereby permanently restrained and enjoined from:

A.      Misrepresenting or assisting others in misrepresenting, expressly or by implication, any material fact, including but not limited to:

   1. The terms or rates that are available for any loan or other extension of credit, including but not limited to:

   (a) closing costs or other fees;

   (b) the payment schedule, the monthly payment amount(s), or other payment terms, or whether there is a balloon payment; interest rate(s), annual percentage rate(s), or finance charge; the loan amount, the amount of credit, the draw amount, or outstanding balance; the loan term, the draw period, or maturity; or any other term of credit;

   (c) the savings associated with the credit;

   (d) the amount of cash to be disbursed to the borrower out of the proceeds, or the amount of cash to be disbursed on behalf of the borrower to any third parties;

   (e) whether the payment of the minimum amount specified each month covers both interest and principal, and whether the credit has or can result in negative amortization;

   (f) that the credit does not have a prepayment penalty or that no prepayment penalty and/or other fees or costs will be incurred if the consumer subsequently refinances; and

   (g) that the interest rate(s) or annual percentage rate(s) are fixed rather than adjustable or adjustable rather than fixed;

   2. That any person can improve any consumer's credit record, credit history, or credit rating by permanently removing negative information from the

- 8 -

consumer's credit record, credit history, or credit rating, even where such information is accurate and not obsolete;

3.    Any person's ability to improve or otherwise affect a consumer's credit record, credit history, or credit rating or ability to obtain credit;

4.    Any aspect of any debt relief good or service, including but not limited to, the amount of savings a consumer will receive from purchasing, using, or enrolling in such debt relief good or service; the amount of time before which a consumer will receive settlement of the consumer's debts; or the reduction or cessation of collection calls; and

5.    That a consumer will receive legal representation; and

B.    Advertising or assisting others in advertising credit terms other than those terms that actually are or will be arranged or offered by a creditor or lender.

III. PROHIBITED REPRESENTATIONS RELATING TO ANY GOODS OR SERVICES

IT IS FURTHER ORDERED that Defendant Expert Foreclosure, and its successors and assigns, and their officers, agents, servants, employees, and attorneys, and those persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, in connection with the advertising, marketing, promotion, offering for sale or sale of any good, service, plan, or program are hereby permanently restrained and enjoined from misrepresenting or assisting others in misrepresenting, expressly or by implication, any material fact, including but not limited to:

A.     Any material aspect of the nature or terms of any refund, cancellation, exchange, or repurchase policy, including, but not limited to, the likelihood of a consumer obtaining a full or partial refund, or the circumstances in which a full or partial refund will be granted to the consumer;

B.     That any person is affiliated with, endorsed or approved by, or otherwise connected to any other person, government entity, any federal homeowner relief or financial stability program, or any other program;

C.     The total costs to purchase, receive, or use, and the quantity of, the good or service;

D.     Any material restriction, limitation, or condition to purchase, receive, or use the good or service; and

E.     Any material aspect of the performance, efficacy, nature, or characteristics of the good or service.

## IV. MONETARY JUDGMENT

IT IS FURTHER ORDERED that:

A.     This monetary judgment shall become immediately due and payable by Expert Foreclosure upon entry of this Order, and interest computed at the rate prescribed under 28 U.S.C. § 1961(a), as amended, shall immediately begin to accrue on the unpaid balance.

B.     All funds to be paid to the Commission  by Defendant Brian Blanchard pursuant to the Court's Contempt Order, dated August 4, 2009, shall be applied to the

final monetary judgment as to Defendant Expert Foreclosure, as set forth in Subsection A of this Section.

C.     Proceeds held by the Temporary Receiver from the sale of the Receivership Defendant's assets and the balances held in Receivership Defendants' accounts, shall be paid to the Commission pursuant to this Order, and shall be credited against the amount of the judgment owed by Defendant Expert Foreclosure as set forth in Subsection A in this Section, provided, that the Temporary Receiver may deduct his costs and fees as approved by the Court.

D.     All payments made under this Section shall be made by certified check or other guaranteed funds payable to and delivered to the FTC, or by wire transfer in accordance with directions provided by the FTC.

E.     All funds paid pursuant to this Section shall be deposited into a fund administered by the Commission or its agents to be used for equitable relief, including, but not limited to, restitution and any attendant expenses for the administration of such equitable relief.  If the Commission determines, in its sole discretion, that direct redress of consumer injury is wholly or partially impracticable, or funds remain after the restitution is completed, the Commission may apply any remaining funds for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint.  Any funds not used for such equitable relief shall be deposited to the United States Treasury as disgorgement.  Defendant Expert Foreclosure shall have no right to challenge the Commission's choice of remedies under this Section.  This judgment for equitable

monetary relief is solely remedial in nature and is not a fine, penalty, punitive assessment, or forfeiture.

## V. TURNOVER OF ASSETS HELD BY THIRD PARTIES

IT IS FURTHER ORDERED that in order to partially satisfy the monetary judgment set forth in Section IV.A above, any law firm, financial or brokerage institution, escrow agent, title company, commodity trading company, automated clearing house, network transaction, business entity, or person served with a copy of this Order, that holds, controls, or maintains custody of any account or asset of, on behalf of, or for the benefit of, Defendant Expert Foreclosure, or has held, controlled, or maintained custody of any account or asset of, on behalf of, or for the benefit of, Defendant Expert Foreclosure, shall turn over such asset or all funds in such account to the Commission within ten (10) business days of receiving notice of this Order by any means, including, but not limited to, via facsimile.  Such turnover or payment shall be made by the methods specified in Subsection IV.D. above.

## VI. LIFTING OF THE ASSET FREEZE

IT IS FURTHER ORDERED that the freeze on Defendant Expert Foreclosure's assets shall remain in effect until the Commission has received all payments required by Sections IV.B, IV.C, and V above.

## VII. ORDER PROVISION REGARDING CUSTOMER INFORMATION

IT IS FURTHER ORDERED that the Corporate Defendant and its officers, agents, employees, and corporations, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether

acting directly or through any trust, corporation, subsidiary, division or other device, including, but not limited to, fictitious business names, are permanently restrained and enjoined from:

A.      Disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, mortgage account, or other financial account), of any person which any Defendant obtained prior to entry of this Order in connection with the Defendant Expert Foreclosure's mortgage loan modification or foreclosure relief service; and

B.      Failing to dispose of such customer information in all forms in their possession, custody, or control within 30 days after entry of this order.  Disposal shall be by means that protect against unauthorized access to the customer information, such as by burning, pulverizing, or shredding any papers, and by erasing or destroying any electronic media, to ensure that the customer information cannot practicably be read or reconstructed.

Provided, however, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by a law, regulation, or court order.

## VIII. PRIOR RECEIVERSHIP POWERS

IT IS FURTHER ORDERED that, to the extent they are not inconsistent with this Order, all powers granted to the Temporary Receiver over Expert Foreclosure pursuant to the Order entered April 16, 2009, shall remain in full force and effect.

## IX. COOPERATION WITH TEMPORARY RECEIVER

IT IS FURTHER ORDERED that, so long as the Receivership remains in effect, Defendants shall cooperate fully with the Temporary Receiver in: (a) pursuing any and all claims by the Receivership against third parties; (b) assisting the Temporary Receiver in defending any and all actions or claims brought against the Receivership by third parties; and (c) executing any documents necessary to transfer assets or ownership interests to the Temporary Receiver pursuant to the terms of this Order.

## X. WINDING UP OF RECEIVERSHIP DEFENDANTS

IT IS FURTHER ORDERED that the Temporary Receiver shall liquidate all assets of the Receivership Defendant and wind up all activities and operations of the Receivership Defendant and its subsidiary and affiliated entities.  Upon entry of this Order, the Temporary Receiver shall transfer to the Commission or its agent all evidence in the Temporary Receiver's possession, including but not limited to, computer servers, hard drives, and paper files.

## XI. COMPENSATION OF TEMPORARY RECEIVER

IT IS FURTHER ORDERED that the Temporary Receiver and all personnel hired by the Temporary Receiver as herein authorized, including counsel to the Temporary Receiver and accountants, are entitled to reasonable compensation for the performance

of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by, or in the possession or control of, or which may be received by the Receivership Defendant.  Said fees and out-of-pocket expenses shall be paid prior to any monetary relief that may be awarded by this Court to purchasers of the Receivership Defendant's mortgage loan modification or foreclosure relief service.

## XII. TERMINATION OF RECEIVERSHIP

IT IS FURTHER ORDERED that the Temporary Receiver shall, if he has not already done so, file his final report and request for fees and expenses within 30 days of the execution of this Order, unless good cause is shown to extend the Receivership beyond 30 days.  The Temporary Receiver's final report and request for fees and expenses shall be served upon the parties through counsel.  Plaintiff may object within 15 days of receipt, but Defendants shall have no right to object.  Upon submission of the Temporary Receiver's final report or upon this Court's Order for Final Payment, whichever is later, and subject to the terms set forth in Sections IV.C and X herein, the Receivership shall terminate.

## XIII. BANKRUPTCY PROVISIONS FOR MONETARY RELIEF SECTION OF ORDER

IT IS FURTHER ORDERED that the Corporate Defendant relinquishes all dominion, control, and title to the funds paid to the fullest extent permitted by law.  The Corporate Defendant shall make no claim to or demand for return of the funds, directly or indirectly, through counsel or otherwise.

XIV.COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring and investigating compliance with any provision of this Order:

A.     Within ten (10) days of receipt of written notice from a representative of the Commission, the Corporate Defendant shall submit additional written reports, which are true and accurate and sworn to under penalty of perjury; produce documents for inspection and copying; appear for deposition; and provide entry during normal business hours to any business location in the Corporate Defendant's possession or direct or indirect control to inspect the business operation;

B.     In addition, the Commission is authorized to use all other lawful means, including but not limited to:

1.     obtaining discovery from any person, without further leave of court, using the procedures prescribed by Fed. R. Civ. P. 30, 31, 33, 34, 36, 45 and 69;

2.     having its representatives pose as consumers and suppliers to the Corporate Defendant, its employees, or any other entity managed or controlled in whole or in part by the Corporate Defendant, without the necessity of identification or prior notice; and

C.     The Corporate Defendant shall permit representatives of the Commission to interview any employer, consultant, independent contractor, representative, agent, or employee who has agreed to such an interview, relating in any way to any conduct subject to this Order.  The person interviewed may have counsel present.

Provided however, that nothing in this Order shall limit the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1, to obtain any documentary material, tangible things, testimony, or information relevant to unfair or deceptive acts or practices in or affecting commerce (within the meaning of 15 U.S.C. § 45(a)(1)).

XV.COMPLIANCE REPORTING

IT IS FURTHER ORDERED that, in order that compliance with the provisions of this Order may be monitored:

A.     For a period of three (3) years from the date of entry of this Order, the Corporate Defendant shall notify the Commission of any changes in structure of any Corporate Defendant or any business entity that any Corporate Defendant directly or indirectly controls, or has an ownership interest in, that may affect compliance obligations arising under this Order, including but not limited to:  incorporation or other organization; a dissolution, assignment, sale, merger, or other action; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; or a change in the business name or address, at least thirty (30) days prior to such change, provided that, with respect to any such change in the business entity about which any Corporate Defendant learns less than thirty (30) days prior to the date such action is to take place, such Corporate Defendant shall notify the Commission as soon as is practicable after obtaining such knowledge.

B.     One hundred eighty (180) days after the date of entry of this Order and annually thereafter for a period of three (3) years, the Corporate Defendant shall provide

a written report to the FTC, which is true and accurate and sworn to under penalty of perjury, setting forth in detail the manner and form in which they have complied and are complying with this Order.  This report shall include, but not be limited to:

1.     A copy of each acknowledgment of receipt of this Order, obtained pursuant to the Section titled "Distribution of Order;" and

2.     Any other changes required to be reported under Subsection A of this Section.

C.     The Corporate Defendant shall notify the Commission of the filing of a bankruptcy petition by such Corporate Defendant within fifteen (15) days of filing.

D.     For the purposes of this Order, the Corporate Defendant shall, unless otherwise directed by the Commission's authorized representatives, send by overnight courier all reports and notifications required by this Order to the Commission, to the following address:

Associate Director for Enforcement

Federal Trade Commission

600 Pennsylvania Avenue, N.W., Room NJ-2122

Washington, D.C. 20580

RE: FTC v. Home Assure, LLC, et al. 8:09-cv-547-T23 TBM (M.D. Fla.)

Provided that, in lieu of overnight courier, the Corporate Defendant may send such reports or notifications by first-class mail, but only if the Corporate Defendant contemporaneously sends an electronic version of such report or notification to the Commission at: DEBrief@ftc.gov.

E.      For purposes of the compliance reporting and monitoring required by this Order, the Commission is authorized to communicate directly with the Corporate Defendant.

## XVI. RECORD KEEPING PROVISIONS

IT IS FURTHER ORDERED that, for a period of six (6) years from the date of entry of this Order, in connection with the advertising, marketing, promoting, offering for sale, or sale of any financial related good or service, the Corporate Defendant and its agents, employees, officers, corporations, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from failing to create and retain the following records:

A.      Accounting records that reflect the cost of goods or services sold, revenues generated, and the disbursement of such revenues;

B.      Personnel records accurately reflecting:  the name, address, and telephone number of each person employed in any capacity by such business, including as an independent contractor; that person's job title or position; the date upon which the person commenced work; and the date and reason for the person's termination, if applicable;

C.      Customer files containing the names, addresses, phone numbers, dollar amounts paid, quantity of items or services purchased, and description of items or services purchased, to the extent such information is obtained in the ordinary course of business;

D.    Complaints and refund requests (whether received directly or indirectly, such as through a third party) and any responses to those complaints or requests;

E.    Copies of all sales scripts, training materials, advertisements, or other marketing materials, including websites; and

F.    All records and documents necessary to demonstrate full compliance with each provision of this Order, including but not limited to, copies of acknowledgments of receipt of this Order required by the Sections titled "Distribution of Order" and "Acknowledgment of Receipt of Order" and all reports submitted to the FTC pursuant to the Section titled "Compliance Reporting."

## XVII. DISTRIBUTION OF ORDER

IT IS FURTHER ORDERED that, for a period of three (3) years from the date of entry of this Order, the Corporate Defendant shall deliver copies of the Order as directed below:

A.    The Corporate Defendant must deliver a copy of this Order to (1) all of its principals, officers, directors, and managers; (2) all of its employees, agents, and representatives who engage in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure set forth in Subsection A.2 of the Section titled "Compliance Reporting."  For current personnel, delivery shall be within five (5) days of service of this Order upon such Defendant.  For new personnel, delivery shall occur prior to them assuming their responsibilities.  For any business entity resulting from any change in structure set forth in Subsection A.2 of the Section

titled "Compliance Reporting," delivery shall be at least ten (10) days prior to the change in structure.

B.     The Corporate Defendant must secure a signed and dated statement acknowledging receipt of the Order, within thirty (30) days of delivery, from all persons receiving a copy of the Order pursuant to this Section.

## XVIII. ACKNOWLEDGMENT OF RECEIPT OF ORDER

IT IS FURTHER ORDERED that the Corporate Defendant, within five (5) business days of receipt of this Order as entered by the Court, must submit to the Commission a truthful sworn statement acknowledging receipt of this Order.

## XIX. SCOPE OF ORDER

IT IS FURTHER ORDERED that this Order resolves only claims against the Corporate Defendant, and does not preclude the Commission from initiating further action or seeking any remedy against any other persons or entities, including, without limitation, persons or entities who may be subject to portions of this Order by virtue of actions taken in concert or participation with the Corporate Defendant, and persons or entities in any type of indemnification or contractual relationship with the Corporate Defendant.

## XX. ENTRY OF THIS DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND MONETARY RELIEF

IT IS FURTHER ORDERED, pursuant to Federal Rule of Civil Procedure 54(b), that there is no just reason for delay, and the Clerk of the Court immediately shall enter this Default Judgment and Order for Permanent Injunction and Monetary Relief.

## XXI. RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court shall retain jurisdiction of this matter

for purposes of construction, modification, and enforcement of this Order.

ORDERED in Tampa, Florida, on August 20, 2010.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE